THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

John Wallace Wilburn, Jr.,

v.

Rutherford County, Tennessee, and Jury Demand (8)
an Unknown Sheriff's Deputy.

___

**Complaint**
___

For his complaint brought pursuant to 42 U.S.C. § 1983 and Tenn. Code Ann. § 29-20-205 against Rutherford County, Tennessee and unknown deputies, John Wallace Wilburn, Jr. states the following:

## I.      Parties

1.      Plaintiff John Wallace Wilburn, Jr. ("Mr. Wilburn"), is a thirty-nine-year-old citizen and resident of La Vergne, Rutherford County, Tennessee.

2.      Defendant Rutherford County, Tennessee ("the County") is a governmental entity and a political subdivision of the state of Tennessee.  The County may be served with process through its Mayor, Ernest G. Burgess.  The Rutherford County Sheriff's Office ("RCSO") is the department of the County responsible for operating the Rutherford County Adult Detention Center ("County jail") located at 940 New Salem Highway, Murfreesboro, TN 37129.

3.      Defendant Unknown Sheriff's Deputy ("Deputy John Doe") is a deputy of the RCSO who was working in the booking room of the Rutherford County Adult Detention Center on January 8, 2017 and answered the phone call from Mr. Wilburn's wife, Cheryl Wilburn, at 9:46 p.m.  His identity should be readily discovered by observation of relevant video recordings.  At that time, this Complaint will be amended to include his true identity.

## II. Jurisdiction & Venue

4. This civil action, brought pursuant to 42 U.S.C. § 1983, states a claim for a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, due to the County and deputies' deliberate indifference to Mr. Wilburn's serious medical needs. Consequently, this Court has original jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331.

5. As Mr. Wilburn's claims brought pursuant to Tenn. Code Ann. § 29-20-205 form a part of the same case and controversy as his federal claims, this Court has supplemental, pendent-claim jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

6. This Court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(c)(2) because the County is deemed to reside in the middle district of Tennessee.

## III. Facts

7. Mr. Wilburn has a history of arrests and has been detained by the RCSO at the County jail on several previous occasions.

8. He served four months in the County jail in the fall of 2016, and during that period of detention he demonstrated suicidal ideation and was placed on suicide watch for many days. As a result numerous deputies with the RCSO are familiar with his suicidal tendencies.

9. After his release in late 2016, he was arrested again on January 8, 2017 in the early evening on outstanding warrants at his home by officers with the City of La Vergne Police Department. He was transported to the La Vergne Police Department. Shortly thereafter, RCSO deputies picked him up and transported him to the County jail.

10. Immediately prior to his arrest, Mr. Wilburn had consumed a large quantity of alcohol (approximately 110 ounces of malt liquor beer), and he was severely and obviously intoxicated.

11. After he arrived in the booking room, the RCSO deputies who performed the intake procedure were actually aware and knew that Mr. Wilburn was severely intoxicated.

12. After intake, he was placed in booking-room cell number 116, which is commonly known as the "drunk tank."

13. On January 8, 2017, booking-room cell number 116 contained a wall-mounted telephone. The telephone's handset was connected to the telephone with a length of metal cord which was long enough for a man to wrap it around his neck and secure it in place.

14. As is the constantly followed and absolute custom of the RCSO, the window on the door of cell 116 was covered with an opaque magnet during the entire time Mr. Wilburn was inside the cell that day.

15. Mr. Wilburn spent many hours in cell number 116, and remained in the cell until late in the evening. During the entire period of time he was in the cell, no RCSO personnel of any kind ever opened the door or lifted the magnet to observe any of the intoxicated inmates.

16. In other words, several hours passed without the RCSO conducting any personal observation of the inmates in the "drunk tank."

17. At 9:46 p.m. on January 8, 2017, Mr. Wilburn's wife, Mrs. Charlene Wilburn, called the booking room at the County jail at (615) 898-7774. Defendant Deputy John Doe answered the phone. Upon information and belief, this deputy's last name begins with the letter, "B," and is possibly Burns.

18. The purpose of Mrs. Wilburn's telephone call was to inform the RCSO that Mr. Wilburn had been suicidal at the time he was arrested. She specifically told the deputy that Mr. Wilburn was "suicidal" and that he planned to kill himself.

19.     The deputy asked Mr. Wilburn's birthdate, which she gave, and asked her why she thought he was suicidal, and she explained that the time of Mr. Wilburn's arrest, Mr. Wilburn had told her adult son that he would not go back to jail, and that he was "going to kill himself."

20.     The deputy told Mrs. Wilburn that they would "do their best," but they were "really busy" and ended the call.

21.     Following this call, no personnel communicated with or checked on Mr. Wilburn in any way.  In other words, following the call, no personal observation was made of Mr. Wilburn, and no one talked to him to see if he was in fact, suicidal.

22.     Late that evening, Mr. Wilburn wrapped the telephone's metal cord around his neck and securely hooked it back to itself.

23.     Mr. Wilburn then slumped down toward the floor and hung for over three minutes.

24.     For certain, he would have died had one of his fellow detainees in cell 116 not woken up and discovered that he was in the process of committing suicide with the telephone cord.

25.     The other detainee began banging hard on the cell door to get the attention of the deputies.

26.     When the deputies took him down, Mr. Wilburn was unconscious, first aid was administered, and he was transported to TriStar StoneCrest Medical Center.

27.     After a few hours at that facility, he was transported again to the Hendersonville Medical Center.

28.     Although he survived the attempted suicide, Mr. Wilburn suffers from permanent injury and substantial neck pain caused by the prolonged hanging.  He has also experienced pain and suffering, embarrassment, shame, and other psychological and mental injuries.

29.     Prior to January 8, 2017, the RCSO had actual, specific knowledge that the telephones with metal cords located in their booking-room cells posed a risk of death by suicide.

30.     They had this actual knowledge because within the year prior to Mr. Wilburn's attempted suicide, at least three other inmates had either committed suicide by hanging themselves in the County jail, or attempted suicide by hanging themselves in the County jail.

31.     Specifically, on January 30, 2016, intoxicated inmate Jonothan Maxwell had committed suicide and died as a result of hanging himself with the metal telephone cord in County jail booking room cell number 117, which is directly adjacent to cell number 116.

32.     On February 1, 2016, another intoxicated inmate with the last name Woodard attempted suicide in booking-room cell number 122 by wrapping the metal telephone cord from the telephone in that cell around his neck.  Fortunately, he was saved before he died.

33.      On February 5, 2016, inmate Michael J. Murray committed suicide and died in the County jail, also as a result of hanging, although it is not known at this time whether he hung himself with a telephone cord or in another manner.

33.     The RCSO contracts with Rudd Medical Services to provide medical services and treatment at the County jail.

34.     Following Woodard's attempted suicide by telephone-cord hanging, on February 1, 2016, Dr. Dan Rudd, the owner of Rudd Medical Services, specifically recommended to the RCSO that all booking-room telephones be removed.  (Exhibit 1, 2/2/2016 email from deputy Thomas McBroom to Captain Derrell Cagle & Deputy Chief Tommy Thompson).  All telephones were not removed.

35. The Tennessee Corrections Institute ("TCI") is the state agency which promulgates the *Minimum* Standards for Local Adult Correctional Facilities. (Exhibit 2, Chapter 1400-1, Minimum Standards for Local Adult Correctional Facilities, revised 01/2015).

36. These minimum standards applied to Rutherford County, and the County jail on January 8, 2017.

37. During the course of a prior civil action (involving the wrongful death of Jonothan Maxwell), a sixteen-year veteran of the TCI, Mr. Bobby Ray Bass, testified in a deposition on October 14, 2016, three months before Mr. Wilburn's attempted suicide by telephone-cord hanging.

38. At his deposition, Mr. Bass informed the RCSO that it was a violation of minimum standards to put an intoxicated inmate in a cell that contained a metal phone cord.

39. He notified the County with his testimony that having a telephone with a cord in a booking-room holding cell was dangerous because "an inmate who wanted to harm himself could easily use that to hang himself on. . . . it's widely documented across the entire United States that a lot of inmates have succumbed to death by taking a telephone and a cord and wrapping his neck and sitting down." (Exhibit 3, deposition excerpt from Mr. Bass's 10/14, 2016 deposition, p. 47:11-22). He also notified the County that putting a severely intoxicated inmate in a cell with a long metal telephone cord was inappropriate and a violation of minimum standards. (*Id.* at p. 116:15–117:1).

40. TCI Minimum Standard 1400-01-.16 (1) regarding "Supervision Of Inmates" states:

> All inmates shall be personally observed by a facility employee at least once every hour on an irregular schedule. More frequent observation shall be provided for inmates who are violent, *suicidal*, mentally ill, *intoxicated*, and for inmates with other special problems or needs. ***The time of all such checks shall be logged, as well as the results.***

TCI Minimum Standards 1400-01-.16 (emphasis added).

41. At his deposition, Mr. Bass also informed the County that "personal observation" as used in TCI Minimum Standard 1400-01-.16 does not include observation by video camera recording. He explained to the County that "personal observation" in this standard means physically and personally observing the inmates with the eyes of the deputies, and that industry standard was personal observation every 15 minutes of intoxicated inmates, which must be recorded in a written log. (Exhibit 3, deposition excerpt from Mr. Bass's 10/14, 2016 deposition, p. 24:10–25:12).

42. On January 8, 2017, the RCSO had actual notice that Mr. Wilburn was both suicidal and intoxicated.

43. On January 8, 2017, no RCSO personnel made personal observations of Mr. Wilburn every 15 minutes, and obviously therefore, no log was maintained either. Rather, Mr. Wilburn was left in the cell with the metal phone cord for many hours with no personal observation of any kind.

44. It is a long-standing custom of the RCSO to place intoxicated inmates into booking-room holding cells containing metal phone cords for many hours without conducting any personal observations.

45. According to the deposition testimony of a RCSO deputy in connection with the Jonothan Maxwell case, in the ten-year period prior to Jonothan Maxwell's death by telephone-cord hanging on January 30, 2016, the RCSO had never conducted 15-minute personal observation checks of intoxicated inmates, much less kept a log, despite this being a requirement of minimum standards. (Exhibit 4, excerpt from the 11/18/2016 deposition of RCSO Corporal Mary Hill, p. 63:12-18).

46. In November or December of 2016, the Board of Control for the TCI voted to no longer provide a TCI certification to Rutherford County and decertified the County jail.

47. One of the primary reasons cited by the TCI for the decertification was that the RCSO suicide logs reflected that checks of inmates were not being conducted within the 15 minute standard.

48. During the times relevant to this complaint, Rutherford County Sheriff, Robert Arnold, has been incarcerated in a federal detention facility while he awaits trial on a fourteen-count criminal indictment which includes corruption charges.

## IV.    Causes of Action

**Count 1 – Against Unknown Sheriff's Deputy –**

**Violation of Mr. Wilburn's rights as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983**

49. In the United States of America, when an individual is arrested and held as an arrestee or pre-trial detainee under the authority of a local governmental entity, like the County, the Due Process Clause of the Fourteenth Amendment provides that the officials overseeing the custody must not be deliberately indifferent to the detainees' serious medical needs.

50. The psychological needs of a detainee manifesting themselves in suicidal tendencies are serious medical needs.

51. On January 8, 2017, after being directly informed that Mr. Wilburn was suicidal in the telephone call from Mrs. Wilburn, Deputy John Doe had actual, subjective knowledge that Mr. Wilburn posed an immediate threat of harming himself or taking his own life.

52. Deputy John Doe was deliberately indifferent to the serious medical needs of Mr. Wilburn because he took no precaution to prevent the suicide attempt after receiving the information from Mrs. Wilburn.

52. Deputy John Doe's deliberate indifference was the direct and proximate cause of Mr. Wilburn's hanging, and he is liable for all ensuing damages, including his physical pain, mental suffering, psychological damage, embarrassment, and shame.

53. Deputy John Doe's failure to take any precaution after receiving the phone call from Mrs. Wilburn demonstrates a reckless and callous indifference to Mr. Wilburn's constitutional rights because Deputy John Doe had actual knowledge that Mr. Wilburn was intoxicated and suicidal, and that several inmates had attempted suicide by hanging themselves with a telephone cord just like the one in cell 116 where Mr. Wilburn was being held.

54. Rather than take any precaution, he simply responded to Mrs. Wilburn that they would "do their best," but were "really busy," and then did nothing.

54. Consequently, Deputy John Doe is personally liable to Mr. Wilburn for punitive damages as well as all proven compensatory damages.

### Count 2 – Against the County –

**Violation of Mr. Wilburn's rights as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983**

55. As demonstrated by the TCI's decertification, the prior testimony of Bob Bass, and the testimony of Corporal Mary Hill, the County has a long-tolerated custom of failing to meet *minimum* standards regarding the personal observation of intoxicated and suicidal detainees.

56. This long-standing custom specifically entails the toleration of placing of intoxicated and/or suicidal inmates into booking-room holding cells equipped with telephones having sturdy metal cords for many hours at a time without any observation.

57. The County continued this custom even after the following events: (1) Jonothan Maxwell's January 30, 2016 completed suicide by telephone-cord hanging; (2) the February 1, 2016 attempted suicide by telephone-cord hanging of inmate Woodard; (3) their own medical

provider specifically asked that the telephones be removed from all booking cells; and (4) a top TCI official had directly informed the County in sworn testimony that it was a violation of minimum standards to place an intoxicated inmate in a cell with a telephone with a cord.

58.     The County's custom in this regard directly resulted in the violation of Mr. Wilburn's constitutional rights as described herein.  Were it not for this custom, Mr. Wilburn would not have been placed in a cell with direct, unmonitored access to an efficient means of attempting suicide.

59.     Consequently, the County is liable for all of Mr. Wilburn's ensuing damages, including his physical pain, mental suffering, psychological damage, embarrassment, and shame.

60.     Given the long-standing failure to meet the minimum standards set by the TCI regarding personal observation of intoxicated and/or suicidal inmates, the County has also obviously failed to provide adequate training or supervision to the booking room deputies in general, and specifically to those present on January 8, 2017, and this failure to supervise and train was also a direct and proximate cause of the violation of Mr. Wilburn's constitutional rights.

## Count 2 – Against the County –

## Employee Negligence and Negligence per se Under Tenn. Code Ann. § 29-20-205

61.     All of the deputies present in the booking room on January 8, 2017, including Deputy John Doe, were employees of the County, and they had a duty of care to protect detainees from harm, including self-harm.

62.      By failing to meet TCI minimum standard 1400-01-.16 regarding personal observation of Mr. Wilburn, who was intoxicated and suicidal, failing to take precaution upon being informed that Mr. Wilburn was suicidal, and all their other conduct described herein, the booking-room deputies breached the duty of care owed to Mr. Wilburn and were negligent and

negligent per se. These negligent acts and omissions were all done within the scope of the deputies' employment, and were the proximate cause of all of Mr. Wilburn's damages.

## V. Demand

63. To prevent further injury and loss of life at the Rutherford County jail, and to compensate him for his damages, Mr. Wilburn demands the following awards, relief, and judgment:

    a. The empanelment of an eight-person jury to decide all contested issues of fact and law which they have the power to decide;

    b. The entry of a permanent injunction specifically preventing the County from placing any inmate into a cell equipped with a phone cord, and preventing the County from placing intoxicated inmates in holding cells for more than 15 minutes without conducting personal observations of their well-being;

    c. A judgment of no less than $300,000.00 in compensatory damages against the County and Deputy John Doe for his emotional, physical, and mental pain, permanent injury, mental suffering, psychological damage, embarrassment, loss of enjoyment of life, medical costs, economic and pecuniary damages, and shame;

    d. A judgment of no less than $1,000,000.00 in punitive damages against Unknown Deputy John Doe;

    c. An award of all reasonable attorneys' fees under 42 U.S.C. § 1988(b);

    d. An award of all court costs and discretionary costs incurred in prosecuting this action, including filing fees, and the costs of all court reporters and experts;

    e. An award of the maximum amount of pre-and-post judgment interest available under applicable law; and

    f. Any other additional or further relief which justice may so require.

    Respectfully Submitted,

    /s/ Brandt M. McMillan
    Brandt M. McMillan (BPR No. 025565)
    Tune, Entrekin, & White, P.C.
    315 Deaderick St., Ste. 1700
    Nashville, TN 37238-1700
    p: (615) 244-2770 | f: (615) 244-2778
    bmcmillan@tewlawfirm.com
    *For Plaintiff John Wallace Wilburn, Jr.*